IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AMOTEC, INC., ) <br> ) <br> Plaintiff / Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> ALANA HEALTHCARE, LLC, ) <br> ) <br> Defendant / Counter-Plaintiff. ) <br> _____) <br> ) <br> ALANA HEALTHCARE, LLC, ) <br> ) <br> Third-Party Plaintiff / Counter-Defendant, ) <br> ) <br> v. ) <br> ) <br> ROYCE PARRISH ) <br> ) <br> Third-Party Defendant / Counter-Plaintiff. ) | Case No. 3:13-cv-1333 <br> Judge Haynes / Knowles <br><br> JURY DEMAND |

### REPORT AND RECOMMENDATION

This matter is before the Court upon two Motions: Plaintiff's Motion for Partial Summary Judgment (Docket No. 24), and Defendant's Motion for Summary Judgment (Docket No. 25).

In support of its Motion for Partial Summary Judgment, Plaintiff has contemporaneously filed a "Statement of Material Facts Not In Dispute" (Docket No. 24-1), a Memorandum of Law (Docket No. 24-2), an unsigned document entitled "Complaint" (Docket No. 24-3), the Declaration of Carmine Izzo (Docket No. 24-4), and the Declaration of Royce Parrish (Docket No. 24-5).

Defendant has filed Responses to Plaintiff's Motion for Partial Summary Judgment and

"Statement of Material Facts Not In Dispute." Docket Nos. 36, 37. Attached to its Response to Plaintiff's Motion, Defendant has submitted the Affidavit of Justin Schneider. Docket No. 36-1.

In support of its Motion for Summary Judgment, Defendant has contemporaneously filed a Statement of Undisputed Material Facts (Docket No. 26), a Memorandum of Law (Docket No. 27), and Plaintiff's Response to Defendant's Requests for Admissions (Docket No. 28-1).

Plaintiff has filed Responses to Defendant's Motion for Summary Judgment and Statement of Undisputed Material Facts. Docket Nos. 38, 43. Also in response to Defendant's Motion for Summary Judgment, Plaintiff has additionally filed its own "Statement of Material Facts Not In Dispute" (Docket No. 39), a "Memorandum and Argument in Opposition" to Defendant's Motion (Docket No. 40), the second Declaration of Royce Parrish (Docket No. 41), and the second Declaration of Carmine Izzo (Docket No. 42).

With leave of Court, Defendant has filed a Reply to Plaintiff's responding submissions. Docket No. 47. Attached to its Reply, Defendant has submitted its Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents (Docket No. 47-1), and its Responses to Plaintiff's First Set of Requests for Admission (Docket No. 47-2). Defendant has also submitted its responses to Plaintiff's "Statement of Material Facts Not In Dispute" (Docket No. 39). Docket No. 45.

Plaintiff filed this breach of contract action alleging that Defendant failed to pay rendered invoices for staffing services. Docket No. 1. Plaintiff argues that, per the express terms of the contract agreement ("Agreement"), Defendant had fourteen days from the invoice date in which to dispute any amounts invoiced. *Id.* Plaintiff contends that Defendant did not timely dispute any invoices, but "enjoyed the benefits of the Plaintiff's staffing and profited therefrom." *Id.*

2

Plaintiff further contends that Defendant has "earned money from the labor and services provided to it by Plaintiff," and "has billed for and received reimbursements from both state and federal sources for either services rendered by Plaintiff or prescriptions administered by labor and services provided by Plaintiff's staffing." *Id.* Plaintiff notes that invoices were due upon receipt, but avers that Defendant failed to pay numerous invoices, despite multiple oral and written payment demands by Plaintiff. *Id.* Plaintiff argues that Defendant has admitted that it owes Plaintiff the invoiced amounts and actually entered into a payment plan on February 20, 2012, whereby Defendant agreed to pay Plaintiff "from $5,000.00 to $7,000.00 each week" until Defendant "became current." *Id.* Plaintiff maintains that, despite Defendant's Chief Financial Officer's confirming its agreement to pay a minimum of $5,000.00 per week, Defendant failed to pay the agreed upon payments and the invoices. *Id.*

Plaintiff avers that Defendant committed multiple material breaches of the Agreement, the direct and proximate result of which was Plaintiff's sustaining significant financial damages. *Id.* Plaintiff contends that it paid the staff that it provided Defendant so that it could conduct business, and that Defendant therefore unjustly benefitted from Plaintiff's payment of its payroll for its contracted labor. *Id.* Plaintiff argues that it is entitled to indemnification for the money it advanced to cover Defendant's contract labor, plus recovery of the $64,998.00 due on the invoices, pre- and post- judgment interest, attorney's fees, costs, and whatever further relief to which it may be entitled. *Id.*; Docket No. 24-4, ¶ 76.

With regard to its Motion now before the Court, Plaintiff filed its Motion for Partial Summary Judgment arguing that there are no genuine issues as to any material fact and that the undisputed facts demonstrate that it is entitled to recovery because the parties entered into a valid

3

contract, Plaintiff performed its obligations, Defendant failed to perform its obligations (paying for the services rendered), and Plaintiff has been damaged by Defendant's failure to pay for the services rendered. Docket No. 24-4.

Defendant responds that Plaintiff is not entitled to recover because the invoices were "based on an illegal contract that contained charges that are invalid due to overbilling and erroneous charges for items for which the parties specifically agreed would not be part of the invoices." Docket No. 36. Specifically, Defendant argues that Plaintiff was contracted to provide nurse staffing for home infusion therapy, which required that Plaintiff "have a certain state license that [Plaintiff] admits it never had." *Id.* Defendant contends that because Plaintiff "was not legally licensed to provide home infusion services, despite its initial representation that it had such a license," the contract is void, such that Plaintiff cannot recover. *Id.*

Defendant further contends that the invoice charges are illegal for the reasons set forth above, and are also "invalid because they are not based on the services rendered or the agreement between the parties." *Id.* Defendant argues that Plaintiff had been "systematically overbilling" it by "extending infusion therapy sessions longer than necessary according to the patients' prescriptions, charging for their travel time to patients, and charging excessive mileage." *Id.* Defendant maintains that it confronted Plaintiff with these discrepancies and "the parties eventually worked out a revised billing arrangement for a flat fee of $440 per infusion per day with no mileage." *Id.* Defendant contends that, despite this new arrangement, Plaintiff "continued to overbill and charge for mileage, among other problems." *Id.* Defendant asserts therefore, that "the validity of these invoices are far from undisputed and form an inappropriate basis for summary judgment." *Id.*

Defendant finally responds that, "not only does [it] not owe [Plaintiff] for any work it performed illegally and fraudulently, but [it] is also entitled to offset damages," such that Plaintiff owes Defendant "at minimum $12,000, which is the approximate value of the infusion pumps that [Plaintiff's] agents either stole or lost," plus the "tens of thousands of dollars" in lost business revenue, "not to mention the reputational harm incurred as a result of [Plaintiff's] conduct as well s the attorneys' fees associated with this protracted litigation." *Id.*

As to its Motion for Summary Judgment, Defendant argues that it is entitled to Summary Judgment because it is undisputed that Plaintiff could not legally provide the contracted-for services in Tennessee, and because Plaintiff's recovery is barred by the doctrine of illegality. Docket No. 25. Defendant asserts that, at the time the Agreement was signed, it was not aware that Plaintiff and its nurses were not properly licensed to provide home infusion therapy services in Tennessee. *Id.* Defendant notes that Plaintiff concedes that it never possessed the certificate of need required to get a home health services license in Tennessee, and further concedes that it was never a licensed home care organization in Tennessee. *Id.* Defendant argues that Tennessee law bars recovery under a contract that provides for patient care to be provided in an unlawful manner, as a contract cannot be enforced if the result would be to compel a violation of the law. *Id.* Defendant further argues that "Tennessee law requires that this contract based on illegality be declared void and unenforceable because the very basis of the bargain - the provision of staffing for home infusion therapy - was to be performed by an unlicensed entity." *Id.*

Defendant also maintains that Plaintiff's unjust enrichment claims are barred because it neither charged the patient nor sought reimbursement from any health insurer or government payor for the home-healthcare nurses administering the purchased injectable and infusion

5

medications, because the nursing services were provided as a benefit to its customers. *Id.*

Plaintiff responds that Defendant's Motion for Summary Judgment should be denied because it is premised upon an unpled affirmative defense. Docket No. 38. Plaintiff argues that, because Defendant did not plead the affirmative defense of illegality in its Answer, it is waived. *Id.* Plaintiff additionally responds that there are material facts in dispute which render summary judgment inappropriate. *Id.* Specifically, Plaintiff argues that it did not have to have a certificate of need in order to provide Defendant with nurses. *Id.* Plaintiff argues, "To the contrary, [Defendant] may have needed to obtain a [certificate of need], but not [Plaintiff]." *Id.* Plaintiff further responds that: (1) the factual issues on which Defendant has not adduced proof must be deemed undisputed in favor of Plaintiff; (2) Defendant's Motion lacks sufficient information to support its Motion "even if the law supported its position, which it does not"; and (3) Defendant is not entitled to a judgment as a matter of law. *Id.*

Defendant, in its Reply, argues that, contrary to Plaintiff's assertion, it has "repeatedly pled the affirmative defense of illegality not only in its Answer to the Complaint, but also throughout this lawsuit and indeed from the inception of this dispute," such that it did not waive the defense of illegality. Docket No. 47. Defendant further replies that it is undisputed that the Tennessee Department of Health Board of Licensing Health Care Facilities has set forth very specific rules and regulations that require health professionals to have a certain license and organizations who provide these health care professionals to have a certificate of need to perform home infusion therapy. *Id., citing* Tenn. Comp. R. And Regs. § 1200-8-26-.02 et seq. Defendant responds that Plaintiff "held itself out to be a licensed home healthcare provider with whom [Defendant] could contract to assist pharmacy patients with infusion of their medications

purchased from [Defendant]." *Id.* Defendant notes that: (1) it was a pharmacy, not a home healthcare provider; (2) it was not in the business of providing home health care infusion, but rather, only sold the pharmaceuticals through its pharmacy operations; and (3) it was "not required to obtain such a license or certificate of need itself because it contracted, or so it thought, with an entity legally licensed to perform these services." *Id.*

Defendant argues that it is undisputed that Plaintiff offered its services to Defendant and Defendant's customers and, in so doing, held itself out as having all the requisite authority and licenses; and is further undisputed that these representations by Plaintiff were untrue and therefore, the provision of these services which formed the very basis of the contract was illegal. *Id.* Defendant reiterates it contention that Tennessee courts will not enforce obligations arising out of a contract that is illegal. *Id.*

For the reasons discussed below, the undersigned finds that genuine issues of material fact exist such that summary judgment is inappropriate in this action. Accordingly, the undersigned recommends that both of the instant Motions (Docket Nos. 24, 25) be DENIED.

## II. Undisputed Facts[1]

**A. Declarations of Carmine Izzo**

Plaintiff entered into an Agreement with Defendant on June 2, 2011, to provide staffing services in Middle Tennessee. Docket No. 24-4, Declaration of Carmine Izzo ("First Izzo Dec."), ¶ 5. Defendant agreed to the terms of service and paid Plaintiff's invoices in accordance

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

with that Agreement [*sic*].² *Id.*

    Defendant has not paid Plaintiff for the following invoices:

    - Invoice #1726144, dated 11/29/2011, in the amount of $284.27

    - Invoice #1726170, dated 12/06/2011, in the amount of $1,549.30

    - Invoice #1726172, dated 12/06/2011, in the amount of $1,311.65

    - Invoice #1726173, dated 12/06/2011, in the amount of $1,824.00

    - Invoice #1726219, dated 12/06/2011, in the amount of $2,281.75

    - Invoice #1726223, dated 12/13/2011, in the amount of $1,586.65

    - Invoice #17401, dated 12/19/2011, in the amount of $481.65

    - Invoice #17402, dated 12/19/2011, in the amount of $1,455.60

    - Invoice #17403, dated 12/19/2011, in the amount of $1,540.80

    - Invoice #17404, dated 12/19/2011, in the amount of $679.95

    - Invoice #17407, dated 12/27/2011, in the amount of $464.30

    - Invoice #17408, dated 12/27/2011, in the amount of $1,786.25

    - Invoice #17409, dated 12/27/2011, in the amount of $1,256.55

    - Invoice #17410, dated 12/27/2011, in the amount of $1,754.81

    - Invoice #17411, dated 12/27/2011, in the amount of $390.00

    - Invoice #17417, dated 1/03/2012, in the amount of $1,284.05

    - Invoice #17418, dated 1/03/2012, in the amount of $1,454.10

    - Invoice #17419, dated 1/03/2012, in the amount of $739.00

---

² Mr. Izzo's statement that Defendant paid Plaintiff's invoices in accordance with the Agreement appears to be a typographical error, as he then sets forth 66 invoices he contends Defendant did not pay as agreed.

- Invoice #17420, dated 1/03/2012, in the amount of $1,549.51

- Invoice #17421, dated 1/03/2012, in the amount of $1,736.76

- Invoice #17426, dated 1/10/2012, in the amount of $624.60

- Invoice #17427, dated 1/10/2012, in the amount of $2,203.85

- Invoice #17439, dated 1/17/2012, in the amount of $1,385.65

- Invoice #17440, dated 1/17/2012, in the amount of $139.30

- Invoice #17465, dated 1/24/2012, in the amount of $432.90

- Invoice #17466, dated 1/24/2012, in the amount of $538.60

- Invoice #17467, dated 1/24/2012, in the amount of $1,217.45

- Invoice #17469, dated 1/24/2012, in the amount of $449.49

- Invoice #1726800, dated 2/07/2012, in the amount of $1,584.05

- Invoice #1726801, dated 2/07/2012, in the amount of $592.10

- Invoice #1726802, dated 2/07/2012, in the amount of $2,729.80

- Invoice #1726803, dated 2/07/2012, in the amount of $450.00

- Invoice #1726814, dated 2/02/2012, in the amount of $231.00

- Invoice #1726878, dated 2/14/2012, in the amount of $1,320.00

- Invoice #1726955, dated 2/21/2012, in the amount of $160.00

- Invoice #1726956, dated 2/21/2012, in the amount of $440.00

- Invoice #1726957, dated 2/21/2012, in the amount of $1,320.00

- Invoice #1726958, dated 2/21/2012, in the amount of $440.00

- Invoice #1746959,[3] dated 2/21/2012, in the amount of $1,480.00

- Invoice #1726960, dated 2/21/2012, in the amount of $1,320.00

- Invoice #1727058, dated 2/28/2012, in the amount of $720.00

- Invoice #1727059, dated 2/28/2012, in the amount of $880.00

- Invoice #1727060, dated 1/03/2012,[4] in the amount of $1,320.00

- Invoice #1727061, dated 2/28/2012, in the amount of $640.00

- Invoice #1727062, dated 2/28/2012, in the amount of $440.00

- Invoice #1727063, dated 2/28/2012, in the amount of $440.00

- Invoice #1727067, dated 2/28/2012, in the amount of $80.00

- Invoice #1727133, dated 3/06/2012, in the amount of $185.50

- Invoice #1727134, dated 3/06/2012, in the amount of $2,700.00

- Invoice #1727135, dated 3/06/2012, in the amount of $880.00

- Invoice #1727144, dated 3/13/2012, in the amount of $1,320.00

- Invoice #1727292, dated 3/20/2012, in the amount of $1,320.00

- Invoice #1727293, dated 3/20/2012, in the amount of $440.00

- Invoice #1727294, dated 3/20/2012, in the amount of $1,320.00

- Invoice #1727295, dated 3/20/2012, in the amount of $680.00

- Invoice #1727296, dated 3/20/2012, in the amount of $440.00

- Invoice #1727297, dated 3/20/2012, in the amount of $880.00

---

[3] This appears to be a typographical error, as the remainder of the invoices from that date and surrounding dates all start with 172.

[4] It is unclear whether this date is a typographical error or whether it was simply listed out of chronological order.

- Invoice #1727344, dated 3/27/2012, in the amount of $1,320.00

- Invoice #1727345, dated 3/27/2012, in the amount of $440.00

- Invoice #1727346, dated 4/03/2012, in the amount of $2,200.00

- Invoice #1727463, dated 4/04/2012, in the amount of $185.80

- Invoice #1727536, dated 4/10/2012, in the amount of $440.00

- Invoice #1727537, dated 4/10/2012, in the amount of $1,320.00

- Invoice #1727539, dated 4/10/2012, in the amount of $880.00

- Invoice #1727548, dated 4/16/2012, in the amount of $184.80

- Invoice #1727552, dated 4/17/2012, in the amount of $1,360.00

*Id.*, ¶¶ 8-75.

The unpaid listed invoices total $64,998.00.[5]  *Id.*, ¶ 76.

Mr. Izzo, Plaintiff's President, communicated with Justin Schneider, Defendant's Chief Financial Officer, via email and otherwise regarding the unpaid invoices.  Docket No. 42, Declaration of Carmine Izzo ("Second Izzo Dec."), ¶ 4.  Mr. Schneider acknowledged Defendant's obligation to pay Plaintiff the unpaid invoices and agreed to pay $5,000.00 per week toward the unpaid invoices.  *Id.*, ¶ 5.  Defendant paid one or perhaps two of the promised payments and then quit paying.  *Id.*

## B.  Declaration of Royce Parrish

Royce Parrish, as Plaintiff's Director of Business Development Docket, was the corporate agent who signed the contract between Plaintiff and Defendant on June 2, 2011.  Docket No. 24-

---

[5] It is unclear how Mr. Izzo calculated this total, as the Court has added up the listed invoices and the listed invoices actually total $67,485.84.

5, Declaration of Royce Parrish ("First Parrish Dec."), ¶¶ 1, 5.

Plaintiff provides nurses to clients throughout Middle Tennessee. Docket No. 41, Declaration of Royce Parrish ("Second Parrish Dec."), ¶ 4. Plaintiff is not required to have a certificate of need for providing nurses to various health care and pharmaceutical companies in Tennessee. *Id.* With respect to the contract between Plaintiff and Defendant, Ms. Parrish specifically inquired about and investigated with the State of Tennessee whether Plaintiff needed a certificate of need, and it was determined that there is no such requirement by the State of Tennessee for the services Plaintiff provides. *Id.* Accordingly, Plaintiff never applied for or obtained a certificate of need because it was not required. *Id.*, ¶ 5.

Defendant hired Ms. Parrish to work for both Mr. Schneider and Defendant while she was working for Plaintiff, with the objective to work for them both simultaneously to assist Defendant with its pharmacy business. *Id.*, ¶¶ 7, 8. Defendant terminated Ms. Parrish and owes her $2,850.00 in unpaid wages. *Id.*, ¶ 9.

Defendant never discussed or demanded that Plaintiff obtain a certificate of need. *Id.*, ¶ 7. In fact, Defendant knew that Plaintiff did not have a certificate of need. *Id.* Plaintiff is a staffing company, not a home health service company or agency. *Id.*

Defendant has paid many of the invoices that it now asserts are illegal. *Id.*, ¶ 6. Defendant admitted owing Plaintiff the money and promised to pay the invoices by paying $5,000.00 per week. *Id.*, ¶ 9.

**C.  Affidavit of Justin Schneider**

Justin Schneider was Defendant's Chief Financial Officer from September 2010 until May 2012, and, at the time of his Affidavit, served as Defendant's President. Docket No. 36-1,

Affidavit of Justin Schneider ("Schneider Aff."), ¶ 1.

In December 2011, after receiving invoices from Plaintiff that were not accompanied by nursing notes or supporting medical documentation, Defendant audited the submitted invoices and felt that the invoices did not reflect the proper amounts and that it had been over-billed in a variety of ways, including the extension of infusion therapy sessions to longer than necessary, charging for travel time, and charging for excessive mileage. *Id.*, ¶¶ 3-4.

In February 2012, the parties worked out a revised billing arrangement that included a flat fee per infusion per day and an agreement to not bill or pay for mileage traveled. *Id.*, ¶ 5. Despite this new arrangement, Plaintiff continued to inappropriately bill Defendant. *Id.*, ¶ 6.

Around this same time period, Defendant noticed that several of its infusion pumps were missing, totaling an approximately $12,000.00 loss.

Defendant has lost revenue and suffered reputational harm amounting to tens of thousands of dollars as a result of its relationship with Plaintiff. *Id.*, ¶ 9.

**D.  Plaintiff's Responses to Defendant's Requests for Admissions**

Plaintiff represents on its website that it provides "recruiting with integrity" and "truly provide[s] integrity in all aspects of our search process." Docket No. 28-1, Plaintiff's Responses to Defendant's Requests for Admissions, Nos. 22, 23. Plaintiff defines "integrity" on its website as "a firm adherence to a code of ethical values" and as "total honesty and sincerity." *Id.*, Nos. 24, 25.

Royce Parrish is the Director of Business Development for Plaintiff's Nashville location and was an employee and agent of Plaintiff at all times relevant to this lawsuit. *Id.*, Nos. 6, 7, 8. Ms. Parrish represented to Defendant during the negotiations of the Agreement that Plaintiff and

its nurses were properly licensed to provide home infusion therapy services in Tennessee. *Id.*, No. 12.

Plaintiff does not have a certificate of need from the Tennessee Health Services Development Agency to provide home health services. *Id.*, No. 44. Plaintiff is not a licensed home health care organization in Tennessee. *Id.*, No. 45.

The nurses that Plaintiff staffed with Defendant were not Defendant's employees. *Id.*, No. 49. Plaintiff's employees have filled Defendant's patients' prescriptions through pharmacies other than that of Defendant. *Id.*, No. 46. Plaintiff's nurses charged Defendant for their travel time, and failed to present an electronic time card to Defendant's representative for verification at the end of each week. *Id.*, Nos. 36, 51. The Agreement requires Plaintiff to invoice Defendant weekly for the number of authorized hours each assigned nurse submits. *Id.*, No. 52.

Plaintiff drafted the Agreement and had an opportunity to engage counsel to review the Agreement before executing it. *Id.*, Nos. 135-36. Plaintiff read and understood the Agreement. *Id.*, Nos. 137-38. The Agreement contains no provisions related to indemnification. *Id.*, No. 4. The Agreement was terminable at will. *Id.*, No. 139.

Plaintiff and Defendant agreed upon a revised billing arrangement on or around February 5, 2012. *Id.*, No. 38. Pursuant to the revised billing arrangement, Plaintiff agreed that Defendant would pay $440.00 per infusion per day with no allowance for mileage. *Id.*, No. 39.

With respect to Invoice numbers 1726814, 1726878, 1726955, 1726956, 1726957, 1726958, 1726959, 1726960, 1727058, 1727059, 1727060, 1727061, 1727062, 1727063, 1727067, 1727133,1727134, 1727135, 1727144, 1727292, 1727293, 1727294, 1727295, 1727296, 1727297, 1727344, 1727345, 1727456, 1727463, 1727536, 1727537, 1727539,

1727548, and 1727552: (1) Defendant did not sign or otherwise approve an electronic time card for these invoices; and (2) Plaintiff did not submit an electronic time card related to these invoices within a week of servicing the patient. *Id.*, Nos. 93-101, 103, 105-13, 115-16, 118, 120, 122-26, 128-32, 134.

Regarding Invoice numbers 1726172, 1726171, 1726173, 1726219, 17401, 17402, 17403, 1726800, 1726801, and 1726803: (1) Defendant did not sign or otherwise approve an electronic time card for these invoices; (2) Plaintiff did not submit an electronic time card related to these invoices within a week of servicing the patient; and (3) Plaintiff's nurses charged for their travel time to the patient. *Id.*, Nos. 55-58, 60-62, 88-89, 91.

With regard to Invoice numbers 1726144, 1726170, 1726223, 17404, 17405, 17407, 17408, 17409, 17410, 17411, 17417, 17418, 17419, 17420, 17421, 17426, 17427, 17439, 17440, 17465, 17466, 17467, 17469, and 1726802: (1) Defendant did not sign or otherwise approve an electronic time card for these invoices; (2) Plaintiff did not submit an electronic time card related to these invoices within a week of servicing the patient; (3) Plaintiff's nurses charged for their travel time to the patient; and (4) Plaintiff's nurses charged different mileage amounts on different days for the same patient. *Id.*, Nos. 53-54, 59, 63-65, 67-69, 71-72, 74-75, 77, 79-87, 90.

### III.  Analysis

**A.  Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## B.  The Case At Bar

The threshold issue before the Court is whether the Agreement signed by both parties in

the instant action is a valid, legal contract. If it is, then the Court turns to the issues of whether the contract was breached, whether the invoiced charges were valid, and what damages are recoverable. The question of whether the parties' signed Agreement is a valid, legal contract, turns on whether Plaintiff could legally provide the services for which it contracted.

It is undisputed that the parties signed an Agreement for Plaintiff to provide nurse staffing services for home infusion therapy. First Izzo Dec., ¶ 1. Plaintiff admits that it represented to Defendant during the negotiations of the Agreement that it and its nurses had the requisite licenses to provide home infusion therapy services in Tennessee. Docket No. 28-1, Plaintiff's Responses to Defendant's Requests for Admissions, No. 12. Plaintiff contends however, that it was not required to have a certificate of need because it is a staffing company, not a home health service company. Second Parrish Dec., ¶¶ 4, 7. Plaintiff states that Defendant knew that Plaintiff did not have a certificate of need and never discussed or demanded that Plaintiff obtain a certificate of need. *Id.*, ¶7. Plaintiff admits that it never applied for or obtained a certificate of need, and argues that this was because it was not legally required to do so. *Id.*, ¶¶ 4, 5, 7.

Defendant contends that, per the Tennessee Department of Health Board for Licensing Health Care Facilities, Tenn. Comp. R. and Regs. § 1200-8-26-.02 *et seq.*, Plaintiff was required to have a certificate of need, and that it entered into the Agreement with Plaintiff based on Plaintiff's representations that it and its nurses had the requisite licenses to provide home infusion therapy services in Tennessee. Docket No. 27. Defendant contends that, at the time the Agreement was signed, Defendant was unaware that Plaintiff and its nurses were not properly licensed to provide home infusion therapy services. *Id.* Defendant argues that the Agreement is void and unenforceable because the very basis of the Agreement, the provision of staffing nurses

17

for home infusion therapy, was to be performed by an unlicensed entity. *Id.*

The issue of whether Plaintiff was required to have a certificate of need or other licensure in order to legally provide nurse staffing for home infusion therapy services in Tennessee is material and is in dispute. For this reason alone, summary judgment for either side is inappropriate.

Additionally, as noted above, if the Agreement is a valid, legal Agreement, then the inquiry turns to whether the contract was breached, whether the invoiced charges were valid, and what damages are recoverable. Whether the invoiced charges were valid and owing is therefore material, and is also in dispute.

Plaintiff admits that its nurses did not submit an electronic time card related to their invoices within a week of servicing the patients, but acknowledges that the Agreement requires Plaintiff to invoice Defendant weekly for the number of authorized hours each assigned nurse submits. *See, e.g.,* Docket No. 28-1, Plaintiff's Responses to Defendant's Requests for Admissions, Nos. 52-134. Plaintiff also admits that Defendant did not sign or otherwise approve electronic time cards related to the invoices at issue, as required. *Id.*

Defendant argues that it was being over-billed and therefore that the invoices did not reflect the proper amounts. Schneider Aff., ¶¶ 3,4. Specifically, Defendant contends the charges are invalid because the invoices contained charges for, *inter alia,* the extension of infusion therapy sessions to unnecessary durations, charges for travel time, and charges for excessive mileage. *Id.* Plaintiff denies that the invoices contained improper charges.

Per the Agreement, Defendant had fourteen days from the invoice date in which it could dispute the charges of an invoice. Docket No. 1., Complaint, ¶ 6. Plaintiff contends that

Defendant failed to timely dispute any charges, while Defendant contends that it disputed the charges in a timely manner. *Compare Id.*, ¶ 7 *with* Docket No. 36.

As can be seen, there are several disputed issues of material fact with regard to the validity of the invoiced charges. Again, summary judgment for either party is inappropriate.

### III. Conclusion

For the reasons discussed above, the undersigned finds that genuine issues as to material facts exist such that summary judgment for either party is inappropriate. Accordingly, the undersigned recommends that both Plaintiff's Motion for Partial Summary Judgment (Docket No. 24) and Defendant's Motion for Summary Judgment (Docket No. 25) be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge